## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS OF** |
| WELBILT, INC., CYNTHIA M. | ) | **THE FEDERAL SECURITIES LAWS** |
| EGNOTOVICH, DINO J. BIANCO, JOAN K. | ) | |
| CHOW, JANICE L. FIELDS, BRIAN R. | ) | |
| GAMACHE, ANDREW LANGHAM, and | ) | **JURY TRIAL DEMANDED** |
| WILLIAM C. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Brian Jones "Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Welbilt, Inc. ("Welbilt" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which The Middleby Corporation ("Middleby") will acquire Welbilt through its subsidiaries Middleby Marshall Inc. ("Acquiror") and Mosaic Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party Middleby is an Illinois corporation headquartered at 1400 Toastmaster Drive, Elgin,  IL,

2.      On April 21, 2021, Welbilt and Middleby jointly announced their entry into a Transaction Agreement dated April 20, 2021 (the "Merger Agreement").  The Merger Agreement provides that Welbilt stockholders will receive 0.1240 shares of Middleby common stock for each share of Welbilt common stock they own (the "Merger Consideration").  Upon closing of the merger, Middleby stockholders will hold approximately 76%, and Welbilt stockholders will hold approximately 24%, of the issued and outstanding shares of the combined company.

3.      On May 28, 2021, Middleby filed a Form S-4 Registration Statement (and as amended on June 9, 2021, the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Welbilt stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information critical and essential to that decision.  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

60120.  Middleby's common stock trades on the NASDAQ Global Select Market under the ticker symbol "MIDD."  Non-party Acquiror is a Delaware corporation and wholly owned, direct subsidiary of Middleby.  Non-party Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of Acquiror.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9.      Plaintiff is a stockholder of the Company and has been at all times relevant hereto.

10.      Defendant Welbilt is a Delaware corporation with its principal executive offices located at 2227 Welbilt Boulevard, New Port Richey, Florida 34655.  Welbilt's common stock trades on the New York Stock Exchange under the ticker symbol "WBT."

11.      Defendant Cynthia M. Egnotovich ("Egnotovich") has been Chair of the Board since the March 2016 Spin-Off and also served as a director of MTW from 2008 until the Spin-Off.

12.      Defendant Dino J. Bianco ("Bianco") has been a director of the Company since the March 2016 Spin-Off and was a director of MTW from 2015 until the Spin-Off.

13.      Defendant Joan K. Chow ("Chow") has been a director of the Company since the March 2016 Spin-Off and was a director of MTW from 2012 until the Spin-Off.

14.      Defendant Janice L. Fields ("Fields") has been a director of the Company since April 2018.

15.      Defendant Brian R. Gamache ("Gamache") has been a director of the Company since

March 2017.

16.     Defendant Andrew Langham ("Langham") has been a director of the Company since the March 2016 Spin-Off.

17.     Defendant William C. Johnson ("Johnson") has been President and Chief Executive Officer ("CEO") of the Company since November 2018, and a director since October 2018.

18.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

19.     Defendants identified in paragraphs 11-18 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

20.     On April 19, 2021, Welbilt and Middleby jointly announced in relevant part:

ELGIN, Ill. & NEW PORT RICHEY, Fla.--(BUSINESS WIRE)--The Middleby Corporation (NASDAQ: MIDD) and Welbilt, Inc. (NYSE: WBT) have entered into a definitive agreement under which Middleby will acquire Welbilt in an all-stock transaction, enhancing the Middleby Commercial Foodservice platform with an attractive portfolio of products, brands and technologies.  This transaction will bring together two complementary businesses, accelerate the Middleby growth strategy into key markets globally and increase core capabilities in highly attractive segments.

The combined company will have approximately $3.7 billion in combined 2020 sales, 73% of which will come from the Commercial Foodservice segment.  With a strong balance sheet and robust cash generation, Middleby will be well positioned and capitalized to support significant R&D and future acquisition opportunities.  Middleby has a long track record of successfully integrating businesses, having completed over 20 acquisitions since 2018, and has a history of driving efficiencies in acquired companies.

Compelling Strategic Rationale

- Creates a broad Commercial Foodservice Equipment platform with enhanced ability to serve customers through a combination of distinct but complementary portfolios with leading brands and broad geographic footprint

- Strengthens customer value proposition across hot-side, cold-side, beverage, technology and aftermarket support services across the globe

- Transaction accelerates R&D and investment into the value-added technologies and services of the future, including ventless cooking, controls, automation and connectivity

- $100 million of anticipated annual cost synergies associated with the transaction to be fully realized by year three, with additional potential from cross-selling opportunities and greater product development not yet quantified; Welbilt stand-alone Business Transformation Program annual improvement of $20 million is incremental

- All-stock transaction maintains the Middleby balance sheet flexibility, with significant expected combined free cash flow to support and grow the business

- Expected net leverage at close of ~3.0x, to be reduced to approximately ~2.0x by the end of 2022

- A landmark transaction in the Middleby long-standing strategy of acquiring, integrating and operating complementary and synergistic businesses

"Today's announcement represents a milestone event for Middleby, Welbilt and the Commercial Foodservice Equipment industry.  The combination of our two great companies creates a leading player with a comprehensive product line, global footprint and advanced technologies and solutions that are well positioned to serve our rapidly changing customer needs and capitalize on emerging industry trends.  The acquisition of Welbilt is a transformational opportunity for Middleby and a compelling combination that will benefit all of our stakeholders," said Middleby CEO Timothy FitzGerald.  "We are excited to welcome the Welbilt team and we will benefit from the highly talented group they have assembled."

William Johnson, CEO of Welbilt, said, "We are pleased to combine with Middleby to offer our customers a broad and innovative portfolio of products and technologies. This transaction will allow Welbilt to accelerate our strategic development and represents an outstanding opportunity for Welbilt shareholders to realize an attractive value and participate in the future value creation of the combined organization.  I am pleased to be joining the Middleby Board of Directors upon closing of the transaction to support a successful combination of the businesses."

Transaction Structure

Under the terms of the agreement, Welbilt shareholders will receive a fixed exchange ratio of 0.1240x shares of Middleby common stock for each share of Welbilt common stock in an all-stock transaction, with an implied enterprise value of $4.3 billion. Based on Middleby's volume-weighted average price during the 30 consecutive trading days ending April 20, 2021 (Middleby's 30-day VWAP), the offer price represents a 28% premium to Welbilt's 30-day VWAP.  Upon closing, Middleby shareholders will own approximately 76 percent and Welbilt shareholders will own approximately 24 percent of the combined company on a fully diluted basis.

The Boards of both companies have unanimously approved the transaction. In addition, Carl C. Icahn (and affiliates), Welbilt's largest shareholder with an 8.4% ownership position, has entered into a support agreement in favor of the transaction.

Governance and Management

Following closing, Timothy FitzGerald will continue as CEO and as a member of the Middleby Board of Directors. Bryan Mittelman will continue to serve as Middleby's CFO. Middleby will expand its Board to include two new directors from the Welbilt board, Chairperson Cynthia Egnotovich and William Johnson.

Financing and Expected Timing

Middleby intends to refinance Welbilt's existing debt through its committed Senior Secured Facility. Based on the expected pro forma leverage ratio at closing, the interest on the incremental financing would be approximately L + 162.5 bps. The transaction is expected to close in late 2021, subject to customary closing conditions, including regulatory and Middleby and Welbilt shareholder approvals.

Advisors

Guggenheim Securities, LLC served as financial advisor to Middleby. Skadden, Arps, Slate, Meagher & Flom LLP served as legal counsel.

Morgan Stanley & Co. LLC served as financial advisor to Welbilt. Gibson, Dunn & Crutcher LLP served as legal counsel.

**The Registration Statement Contains Material Misstatements or Omissions**

21.     Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Welbilt's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

22.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's and Middleby's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, Morgan Stanley Securities, Inc. ("Morgan Stanley"); and (b) the background of the Proposed Transaction.

***Material Omissions Concerning the Company's and Middleby's Financial Projections and Morgan Stanley's Financial Analyses***

23.     The Registration Statement omits material information regarding the Company's and Middleby's financial projections.

24.     With respect to the Company's financial projections, the Registration Statement fails to disclose the line items underlying the Company forecasts for: (a) Adjusted EBITDA (burdened by stock-based compensation ("SBC"); and (b) Unlevered Free Cash Flow.

25.     As to the financial projections for Middleby, the Registration Statement fails to disclose the line times underlying the Middleby forecasts for (a) Adjusted EBITDA before SBC (b) Adjusted EBITDA after SBC; (c) EBITA; and (d) Free Cash Flow.

26.     The Registration Statement also omits material information regarding Morgan Stanley's financial analyses.

27.     The Registration Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Welbilt's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

28.     With respect to *Morgan Stanley's Welbilt Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (a) the line items used to calculate unlevered free cash flow; (b) the terminal values for Welbilt calculated by Morgan Stanley; (c) the inputs and assumptions underlying the terminal growth and discount rates utilized by Morgan Stanley in the analysis; and (d) the number of the Company's fully diluted outstanding shares as of March 31, 2021.

29.     With respect to Morgan Stanley's *Middleby Discounted Cash Flow Analysis*, the

Registration Statement fails to disclose: (a) the line items used to calculate unlevered free cash flow; (ii) the terminal values for Middleby calculated by Morgan Stanley; (c) the inputs and assumptions underlying the terminal growth and discount rates utilized by Morgan Stanley in the analysis; and (d) the number of the Middleby's fully diluted outstanding shares as of March 31, 2021.

30.    With respect to Morgan Stanley's *Public Trading Comparables Analyses* for Welbilt and Middleby, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Morgan Stanley in the analyses.

31.    With respect to Morgan Stanley's *Welbilt Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (a) the projected earnings per share used in the analysis; (b) the basis for applying a range of AV/NTM EBITDA multiples of 11.0x to 13.0x to Welbilt financial estimates; and (c) the inputs and assumptions underlying the use of the discount rate applied  by Morgan Stanley.

32.    With respect to Morgan Stanley's *Middleby Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (a) the projected earnings per share used in the analysis; (ii) the basis for applying a range of AV/NTM EBITDA multiples of 13.0x to 15.0x to Middleby financial estimates; and (iii) the inputs and assumptions the use of the discount rate applied  by Morgan Stanley

33.    With respect to Morgan Stanley's *Relative Discounted Analysts' Future Price Targets* analyses, the Registration Statement fails to disclose: (a) the price targets used in the analysis, including their sources; and (b) the individual inputs and assumptions underlying the discount rates.

34.    With respect to Morgan Stanley's *Precedent Premia Analysis*, the Registration Statement fails to disclose: (a) the transactions observed by Morgan Stanley in the analysis; (b) the premiums for those transactions observed; and (c) the basis for selecting a reference premium range of 10% to 30%.

35.    Without such undisclosed information, Welbilt stockholders cannot evaluate for

themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

36.     The omission of this material information renders the statements in the "Certain Unaudited Forecasted Financial Information"  and "Opinion of Welbilt's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

37.     The Registration Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

38.     The Registration Statement further fails to disclose whether the Company entered into non-disclosure agreements that included a standstill provision and/or "don't-ask, don't-waive" ("DADW") standstill provision that is still in effect and currently precluding a potential buyer from making a topping bid for the Company.

39.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company.  If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Registration Statement.

40.     Any reasonable Welbilt stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

41.     The omission of this information renders the statements in the "Background of the Transactions" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

42.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Welbilt stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information relevant to the

Company's and Middleby's financial projections, the financial analyses performed by the Company's financial advisor, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

46.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

47.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

49.     Plaintiff repeats all previous allegations as if set forth in full.

50.     The Individual Defendants acted as controlling persons of Welbilt within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Welbilt, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements

or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

53.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Welbilt's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Welbilt, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material

information identified above to Welbilt stockholders;

            B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

            C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

            D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

            E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  July 2, 2021                         **LONG LAW, LLC**

                                    By  */s/ Brian D. Long*
                                       Brian D. Long (#4347)
                                       3828 Kennett Pike, Suite 208
                                       Wilmington, DE 19807
                                       Telephone: (302) 729-9100
                                       Email: BDLong@longlawde.com

                                       *Attorneys for Plaintiff*